IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MATTHEW JAMES GRIFFIN,**<br><br>      **Plaintiff,**<br><br>v.<br><br>**DEE DEE BROOKHART,**<br>**LATOYA HUGHES,**<br>**JEREMIAH BROWN,**<br>**ASSISTANT WARDEN JENNINGS,**<br>**MAJOR HENTON,**<br>**MAJOR WHEELER,**<br>**CODY PIPER,**<br>**LIEUTENANT SHELBY,**<br>**SERGEANT JOHNSON,**<br>**SERGEANT HILL,**<br>**JOHN DOE 1,**<br>**JOHN DOE 2,**<br>**JOHN DOE 3,**<br>**JOHN DOE 4,**<br>**JOHN DOE 5,**<br>**JOHN DOE 6,**<br>**JOHN DOE 7,**<br>**JOHN DOE 8,**<br>**JOHN DOE 9,**<br>**NURSE PRACTITIONER WISE,**<br>**C/O MARTIN,**<br>**LAWRENCE CORRECTIONAL CENTER,**<br>**ILLINOIS DEPARTMENT OF CORRECTIONS, and**<br>**SUMMERS,**[1]<br><br>      **Defendants.** | **Case No. 25-cv-01308-SPM** |

---

[1] In the First Amended Complaint, Plaintiff asserts allegations against an individual named Summers in the section describing the nature of his case and in the "cause of action" section. Summers, however, is not listed as a defendant in the case caption. The Court usually will not treat individuals not listed in the caption as defendants. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"). However, because Summers appears to be left out of the case caption due to oversight and for the sake of judicial economy, the Clerk of Court will be directed to add Summers as a defendant on the docket.

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Matthew Griffin, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Lawrence Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE FIRST AMENDED COMPLAINT

Plaintiff alleges the following: Plaintiff was transferred into the custody of the Illinois Department of Corrections from New Mexico under the Interstate Correctional Compact on August 25, 2022. (Doc. 10, p. 6). Upon his arrival at Stateville Correctional Center, prison officials concluded that Plaintiff was "likely handicapped and assigned [him] to an ADA cell." (*Id.*). The following day, medical staff confirmed that Plaintiff was handicapped due to his vision impairment and "shoulder dysfunction." (*Id.*). Medical staff issued Plaintiff a medical permit specifying that he was to be (1) celled in an ADA cell located on a lower gallery with a low bunk bed; (2) issued an eye patch, a magnification card, and a digital talking book player; and (3) restrained by handcuffing his hands in front of his body due to his shoulder injury. (*Id.* at p. 6, 35). Plaintiff provided medical staff with medical records and medical permits from his previous institutions. (*Id.* at p. 7). On September 16, 2022, Plaintiff was transferred from Stateville Correctional Center to Lawrence Correctional Center and assigned to a "handicapped cell, R8-CL-22" in Administrative Detention, which is a high security level housing unit. (*Id.* at p. 8-9, 11).

On September 24, 2022, Plaintiff had an appointment with Dr. Percy Myers. (Doc. 10, p. 9). Dr. Myers issued a medical permit specifying that Plaintiff was to be (1) celled in a cell located on a lower gallery with a low bunk bed; (2) issued an eye patch, magnification card, knee sleeve, orthotic shoes, and a digital book player; and (3) restrained using waist chains. (*Id.* at p. 9, 42). At some point in 2022, Dr. Myers also ordered physical therapy for Plaintiff's shoulder and prescribed gabapentin for his shoulder pain, neuropathy, and sciatic nerve pain. (*Id.* at p. 10).

From September 16, 2022, through January 22, 2023, Plaintiff's medical permit was honored, and he was restrained using waist chains whenever he was transported from his cell. (Doc. 10, p. 10). He states that the Illinois Department of Corrections had in effect Administrative Directive 0512101, which provides, "Administrative Detention inmates are to be restrained behind the back prior to exiting their cell unless medically contradicted." (*Id.* at p. 12). Although he was housed in Administrative Detention, Plaintiff has never received a prison misconduct report while in the custody of the Illinois Department of Corrections. (*Id.*). Starting on January 22, 2023, Plaintiff was informed that Warden Brookhart did not approve any waist chain medical permits, and she was cancelling the waist chain medical permits of those held in Administrative Detention. (*Id.* at p. 10-11).

Specifically, on January 22, 2023, Lieutenant Shelby, Sergeant Hill, Correctional Officer Martin, and Correctional Officers John Does 8 and 9, came to Plaintiff's cell and ordered him to "submit to wrist restraints behind the back."[2] (Doc. 10, p. 18). Plaintiff showed the officers his medical permit which required medical restraints in front or waist chain restraints. (*Id.*). The officers responded that Warden Brookhart had not approved the medical permit and that the medical permit had been cancelled. (*Id.*). Plaintiff was again directed to "submit to restraints

---

[2] Plaintiff specifies that the terms wrist restraints and handcuffs as synonymous. (Doc. 10, p. 7).

behind the back," and he complied. (*Id.*). One or more of the officers forced Plaintiff's wrists together for handcuffing behind his back causing his right shoulder to dislocate. (*Id.*). Plaintiff fell to the ground and injured his right knee, right elbow, and the right side of his head. (*Id.*)

On January 25, 2023, Plaintiff's shoulder was dislocated again. (Doc. 10, p. 13). This time, Lieutenant Piper, Sergeant Johnson, Summers, and Correctional Officers John Does 1, 2, 3, and 4 came to Plaintiff's cell and ordered Plaintiff to be handcuffed behind his back. (Doc. 10, p. 13). When Plaintiff showed the officers his medical permit, they responded that Warden Brookhart had not approved the medial permit and that "security trumps medical." (*Id.*). Plaintiff was directed to "submit to restraints behind the back," and he complied. Plaintiff's arms were pulled behind his back causing his right shoulder to dislocate. (*Id.*). He collapsed to the floor of his cell in pain. (*Id.*). Officers entered the cell and pulled Plaintiff up from the floor by his arms, and he was taken to the showers. (*Id.*). Plaintiff was later escorted to the medical unit for a shoulder x-ray. (*Id.*). During his x-ray and exam, he remained restrained with his hands handcuffed behind his back. (*Id.*). Plaintiff then returned to his cell. (*Id.*).

Assistant Warden Jennings came and spoke with Plaintiff at his cell. (Doc. 10, p. 13-14). Plaintiff showed Jennings his medical permit. (*Id.*). Jennings affirmed that Warden Brookhart had not approved any medical permits for waist chains. (*Id.*). Jennings then ordered Piper, Johnson, Summers, and John Does 1 and 2 to continue handcuffing Plaintiff behind his back when he leaves his cell. (*Id.*).

Between 11:45 and 12:30 that same day, Piper, Johnson, Summers, and John Does 3 and 4 returned to Plaintiff's cell, and again, he was directed to submit to handcuffing behind his back. (Doc. 10, p. 14). Plaintiff showed the officers his medical permit. (*Id.*). The officers repeated that Warden Brookhart had not approved the medical permit and that they had been directed by Major Henton, Major Wheeler, and Assistant Warden Jennings to restrain Plaintiff with his arms behind

his back. (*Id.*). Plaintiff complied with the instructions, and his right shoulder dislocated when his wrists were pulled together to secure the handcuffs. (*Id.* at p. 15). Plaintiff collapsed to the floor. (*Id.*).

Nurse Practitioner Wise came to the cell, and Piper told her that Plaintiff's medical permit needed to be changed so that Plaintiff would not sue them. (Doc. 10, p. 15). Wise told Plaintiff that because security did not approve of his medical permit, she was going to "change it." (*Id.*). She stated, "security trumps medical." (*Id.*). Wise issued a new medical permit that stated, "ok to double cuff behind the back to transfer to waist chains." (*Id.*).

On January 27, 2023, Johnson, Summers, and John Does 5 and 6 came to Plaintiff's cell and instructed him to submit to being handcuffed behind his back. (Doc. 10, p. 16). At the time, Plaintiff had not received the new medical permit issued by Nurse Practitioner Wise. (*Id.*). Plaintiff showed the officers his medical permit and was told that the permit was not approved by Warden Brookhart. (*Id.*). Plaintiff then submitted to wrist restraints behind the back, and his shoulder slipped out of joint. (*Id.*). He collapsed to the floor of his cell. (*Id.*). John Doe 7, a nurse, came to the cell and refused to exam Plaintiff's shoulder. (*Id.*). Instead, she instructed the officers to lift Plaintiff off the floor, causing the "painful relocation of [his] shoulder." (*Id.* at p. 16-17).

Plaintiff states that his requests to be restrained using waist chains continued to be denied by Warden Brookhart on April 24, 2023, and May 2, 2023. (Doc. 10, p. 19). His requests were also denied by Director Hughes on July 14, 2023, and November 7, 2023. (*Id.* at p. 19-20).

**PRELIMINARY DISMISSAL**

The Court dismisses any claim brought against Lawrence Correctional Center. To the extent Plaintiff asserts constitutional violations, Lawrence Correctional Center is not a "person" subject to suit for money damages under Section 1983. *Thomas v. Ill.*, 697 F.3d 612, 613 (7th Cir. 2012). To the extent Plaintiff brings his claims under the ADA and RA, the proper defendant is

the agency or its director in his or her official capacity, not the building in which Plaintiff resides. *Jaros v. Ill. Dep't of Corr.,* 684 F.3d 667, 670 n. 2 (7th Cir. 2012). Because Lawrence Correctional Center cannot be sued under Section 1983, the ADA, or the RA, it shall be terminated as a defendant.

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:** Eighth Amendment excessive force and/or failure to intervene claim against Brookhart, Hughes, Brown, Jennings, Henton, Wheeler, Piper, Shelby, Johnson, Hill, Martin, Summers, and John Does 1, 2, 3, 4, 5, 6, 8, and 9.

**Count 2:** Eighth Amendment deliberate indifference claim against Brookhart, Hughes, Brown, Jennings, Henton, Wheeler, Piper, Shelby, Johnson, Hill, Martin, Summers, Wise, and John Does 1, 2, 3, 4, 5, 6, 7, 8, and 9.

**Count 3:** Civil conspiracy claim against Brookhart, Hughes, Brown, Jennings, Henton, Wheeler, Piper, Shelby, Johnson, Hill, Martin, Summers, Wise, and John Does 1, 2, 3, 4, 5, 6, 7, 8, and 9.

**Count 5:** ADA/RA claim against IDOC.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[3] pleading standard.**

## Count 1

Not every use of force against an inmate is unconstitutional. Only the "unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth

---
[3] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Amendment." *Whiltey v. Albers,* 475 U.S. 312, 319 (1986) (internal quotations and citations omitted). Therefore, "[c]orrectional officers violate the Eighth Amendment when they use force maliciously and sadistically for the very purpose of causing harm, but not when they apply it in good faith to maintain or restore discipline." *Jackson v. Angus*, 808 F. App'x 378, 382 (7th Cir. 2020) (citing *Hudson v. McMillian,* 503 U.S. 1, 6 (1992)). *See also Rice ex rel. Rice v. Corr. Medical Servs.,* 675 F.3d 650, 668 (7th Cir. 2012) (use of pepper spray justified when inmate refused to comply with order to step out of cell).

At this stage Plaintiff has pled sufficient facts to support the inference that Defendants Piper, Shelby, Hill, Martin, Summers, Johnson, and John Does 1, 2, 3, 4, 5, 6, 8, and 9 restrained him with his hands behind his back on four occasions in January 2025 with the intent to cause harm and not in good faith. Plaintiff asserts that despite showing Defendants Shelby, Hill, Martin, Piper, Johnson Summers, and John Does 1, 2, 3, 4, 5, 6, 8, and 9 that he had a medical permit requiring waist chain restraints, they handcuffed him with his hands behind his back, severely injuring his shoulder. Each time, Defendants responded that Warden Brookhart "had not approved the medical orders" and that security is prioritized over medical directives. The justification of security, however, is called into question by Plaintiff's assertions that he has never had a disciplinary report written against him and that his medical permit had previously been honored in the proceeding months. *See Verser v. Smith,* No. 14 CV 1187, 2016 WL 3595727, at *3 (N.D. Ill. 2016) ("The issue presented here is not the need for a type of restraint which is inherently discomforting, but the unnecessary use of a painful means of restraint when an alternative is available and specifically prescribed by a prison physician." (quoting *Perez v. Jackson,* No. 99-2874, 2000 WL 893445, at * (E.D. Pa. 2000))). Because it is alleged that Defendants knowingly disregarded Plaintiff's medical permit and maliciously and sadistically restrained him in a manner that caused him injury, Count 1 will proceed against Shelby, Hill, Martin, Piper, Johnson,

Summers, and John Does 1, 2, 3, 4, 5, 6, 8, and 9 for excessive force and/or failure to intervene. *See Sanchez v. City of Chi.,* 700 F.3d 919, 925-26 (7th Cir. 2012) (an officer can be liable for both for his own use of excessive force and his failure to take reasonable steps to stop the use of excessive force by fellow officers); *Verser,* 2016 WL 3595727, at *6 (allegations that the officer refused to loosen the handcuffs placed on an inmate by another officer and ignored complaints that the handcuffs were too tight stated a plausible claim of excessive force, as opposed to failure to intervene).

Plaintiff attempts to assert "supervisory liability for excessive use of force" against Defendants Brookhart, Hughes, Brown, Jennings, Henton, Wheeler, Piper, Shelby, and Johnson. (Doc. 10, p. 24). He asserts that these individuals "ordered or otherwise authorized the other named subordinate Defendants to use force to restrain [him] in a manner that they knew would cause injury or harm." (*Id.*).

There is no respondeat superior liability, however, under Section 1983. An individual cannot be held liable solely because of his or her supervisory position. *See Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015). In order to be held individually liable for a civil rights violation, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001)).

As stated above, Plaintiff has sufficiently alleged personal involvement in his excessive force claim by Defendants Piper, Shelby, and Johnson, who were directly involved in disregarding his medical permit and handcuffing Plaintiff with his hands behind his back in January 2023, and Count 1 is proceeding against Piper, Shelby, and Johnson.

As to the other remaining supervisory defendants, Director Hughes, Warden Brookhart, Assistant Warden Brown, Assistant Warden Jennings, Major Henton, and Major Wheeler, Plaintiff

asserts that he showed his medical permit to Brookhart and Brown on October 28, 2022. (Doc. 10, p. 9). He goes on to state that in January 2023, Brown, Jennings, Henton, and Wheeler informed him that Brookhart no longer approved waist chain medical permits. (*Id.* at p. 10). Plaintiff spoke with Jennings on January 25, 2023, about his medical permit not being honored resulting in his injury, and Jennings affirmed that Brookhart had not approved the permit and instructed the correctional officers to continue handcuffing Plaintiff behind his back. (*Id.* at p. 14). He further asserts that he was told by correctional officers that Henton, Wheeler, and Jennings had instructed them to restrain him with his hands behind his back. (*Id.*).

Based on these allegations Defendants Brookhart, Brown, Jennings, Henton, and Wheeler were aware of Plaintiff's medical permit but still directed for him to be restrained with his hands behind his back causing injury, despite the fact Plaintiff was not a security threat. These allegations are sufficient to establish personal involvement and that Defendants knew about the repeated use of excessive force and either facilitated, approved, condoned, or turned a blind eye to it. *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (citation omitted). Count 1 will proceed against Brookhart, Brown, Jennings, Henton, and Wheeler.

Count 1, however, will be dismissed as to Director Hughes. The only factual allegations against Hughes are that she denied his request to retain video footage and that she denied his requests for accommodation in writing on July 14, 2023, and November 7, 2023. (Doc. 10, p. 19). These facts are simply too sparse for the Court to plausibly infer personal involvement on the part of Hughes. Plaintiff does not describe how or when he communicated or interacted with Director Hughes. To the extent Hughes's written denials were grievances responses, the denial or mishandling of grievances is not sufficient to impose liability. *See, e.g., Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). Hughes also cannot be found to have deprived Plaintiff of a constitutional right simply because Plaintiff wrote her letters. *See Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir.

2009). Accordingly, Plaintiff has failed to state a claim for excessive force against Hughes.

## Count 2

The Eighth Amendment prohibits the deliberate indifference to a prisoner's "serious medical needs," as deliberate indifference "constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (internal quotations omitted). This indifference includes "intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Id.* at 829. To successfully state an Eighth Amendment claim of deliberate indifference, a plaintiff must plead that the defendant knew of a serious risk of harm and consciously disregarded it. *See Giles v. Godinez,* 914 F. 3d 1040, 1049 (7th Cir. 2019).

Based on the same facts that support Count 1, Plaintiff has stated a claim for deliberate indifference against Brookhart, Brown, Jennings, Henton, Wheeler, Piper, Shelby, Hill, Johnson, Summers, Martin and John Does 1, 2, 3, 4, 5, 6, 8, and 9. *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 812 (7th Cir. 2000) (observing that is nonmedical personnel consciously choose to disregard a nurse or doctor's directions in the face of medical risks, they may well exhibit deliberate indifference). "While this claim appears redundant to [Plaintiff's] excessive force claim, the court will allow it at this stage because the deliberate indifference standard differs from the excessive force standard." *Jeffrey v. Cole,* No. 23-cv-241-pp, 2024 WL 1886728, at *3 (7th Cir. 2024) (citing *Stewart v. Special Adm'r of Estate of Mesrobian*, 559 F. App'x 543, 548-49 (7th Cir. 2014); *Farmer v. Brennan,* 511 U.S. 825, 847 (1994)*; Verser v. Smith, Case,* No. 2016 WL 3595727, at *3 n.7.

Plaintiff has also stated a claim against Nurse Practitioner Wise, who issued Plaintiff a new medical permit allowing him to be double cuffed behind his back for non-medical reasons when he was not a security threat. (Doc. 10, p. 15). *See Perez,* 792 F. 3d at 777 (7th Cir. 2015)

("[d]eliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers blatantly inappropriate medical treatment").

Count 2 is dismissed, however, as to John Doe 7. Plaintiff claims that when he was handcuffed behind his back on January 27, 2023, his shoulder "slipped out of joint" and he "collapsed to the floor." (Doc. 10, p. 16). John Doe 7, a nurse, came to the cell, did not exam Plaintiff, and instructed the correctional officers to lift Plaintiff off the floor causing "painful relocation" of his right shoulder. (*Id.* at p. 16-17). While John Doe 7's decision to have Plaintiff lifted without examining him might have been medical negligence, the facts do not allow the inference that John Doe 7 acted with deliberate indifference, which is akin to criminal recklessness, when responding to Plaintiff. See *Vance v. Peters,* 97 F.3d 987, 992 (7th Cir. 1996) ("a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation").

Count 2 is also dismissed as to Director Hughes. As discussed above, there are no allegations suggesting sufficient personal involvement by Hughes in Plaintiff's handcuffing incidents, outside the review of grievances or the receipt of two letters, to establish liability under Section 1983. Therefore, Plaintiff's allegations fall short of stating a constitutional claim against Hughes for deliberate indifference.

**Count 3**

Plaintiff states that he is suing Defendants for conspiracy in violation of "Title 42 of the United States Code." (Doc. 10, p. 29). Civil conspiracy claims are cognizable under 42 U.S.C. § 1983. See *Lewis v. Washington,* 300 F.3d 829, 831 (7th Cir.2002) (recognizing conspiracy claim under § 1983). Claims of conspiracy, however, necessarily require a certain amount of factual underpinning to survive preliminary review. See *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006)). In order to state a civil

conspiracy claim, "the plaintiff must [plead facts sufficient to] show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer,* 776 F.3d 500, 510 (7th Cir. 2015).

In asserting his conspiracy claim, Plaintiff simply restates the legal elements. (*See* Doc. 10, p, 28-29). Conclusory allegations such as these are not enough to state a claim, and Plaintiff has not plausibly alleged facts supporting a conspiracy. See *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) ("legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [a] presumption of truth"). The facts in the First Amended Complaint do not plausibly point to an agreement reached between the twenty-four listed defendants to deprive Plaintiff of his constitutional rights; rather, it appears that Warden Brookhart has changed a policy regarding medical permits in Administrative Detention, and staff were attempting to follow that policy. See *Twombly,* 550 U.S. at 556-557. ("[w]ithout more, parallel conduct does not suggest conspiracy"). Accordingly, Count 3 is dismissed.

## Count 4

Plaintiff asserts that since January 22, 2023, he has been denied "access to the programs, benefits, and services of the Defendants Illinois Department of Corrections and Lawrence Correctional Center, including but not limited to: medical services and reasonable accommodation for the handicapped or disabled…" (Doc. 10, p. 31). He further asserts that he was denied "reasonable accommodation of bellychain or waist chain restraints with front or side wrist restraints for his diagnosed bilateral shoulder dislocations and shoulder dysfunction." (*Id.* at p. 32).

Under the ADA, "no qualified individual with a disability shall, because of that disability …be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The RA also prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C.

§§ 794-94e. The analysis under the ADA and RA is the same, except that the RA is not restricted to public entities and includes as an additional requirement, the receipt of federal funds, which all states accept for their prisons. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d at 671 (citing 29 U.S.C. § 705(2)(B)). *See also Ruffin v. Rockford Mem'l Hosp.*, 181 F. App'x 582 n. ** (7th Cir. 2006).

Plaintiff has failed to state a claim under the ADA or RA. First, these statutes are not violated when a prison official fails to "attend to the medical needs of ... disabled prisoners." *Resel v. Fox*, 26 F. App'x 572, 576–77 (7th Cir. 2001) (quoting *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996)). "A claim for inadequate medical treatment is improper under" the ADA or RA. *Id. See also Wilson v. Murphy,* No. 14-CV-222-BBC, 2016 WL 1248993, at *6 (W.D. Wis. 2016) (medical treatment decisions are outside the scope of the ADA and RA). Plaintiff's assertion that he was not properly treated for medical condition is distinctly different from a claim that he has been denied access to services or programs because he is disabled.

Second, assuming Plaintiff's shoulder injury rendered him disabled within the meanings of the ADA and RA, he has failed to allege any program or activity to which he was denied access because of his disability. Accordingly, Count 4 is dismissed.

PENDING MOTION

Plaintiff's motion asking the Court to deem the Complaint filed as of June 26, 2025, in accordance with the prison mailbox rule is **DENIED**. (Doc. 9). The timeliness of Plaintiff's Complaint or individual claims is not yet in issue. Plaintiff may renew this argument, if necessary, at a later stage in litigation.

Plaintiff's filing of proposed jury instructions is also premature, and the Clerk of Court is **DIRECTED** to **STRIKE** the proposed jury instructions at Doc. 11. The parties will be informed on the deadline for submitting jury instructions, once dispositive motions have been ruled on by the Court and a final pretrial conference has been scheduled.

**DISPOSITION**

For the reasons stated above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. The Clerk of Court is **DIRECTED** to **ADD** Summers as a defendant in accordance with footnote 1. **COUNT 1** shall proceed against Brookhart, Brown, Jennings, Henton, Wheeler, Piper, Shelby, Hill, Martin, Summers, Johnson, and John Does 1, 2, 3, 4, 5, 6, 8, and 9, and is **DISMISSED without prejudice** against Hughes. **COUNT 2** shall proceed against Brookhart, Brown, Jennings, Henton, Wheeler, Piper, Shelby, Hill, Martin, Summers, Johnson, Wise, and John Does 1, 2, 3, 4, 5, 6, 8, and 9, and is **DISMISSED without prejudice** against Hughes and John Doe 7. **COUNTS 3** and **4** are **DISMISSED without prejudice**. Because there are no surviving claims against Hughes, John Doe 7, IDOC, and Lawrence Correctional Center, the Clerk of Court shall **TERMINATE** them as defendants on the docket.

The Clerk of Court shall prepare for Brookhart, Brown, Jennings, Henton, Wheeler, Piper, Shelby, Hill, Martin, Summers, Johnson, Wise, and John Does 1, 2, 3, 4, 5, 6, 8, and 9 (once identified), the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally

effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Because this suit includes allegations regarding physical injury and medical care, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**Pursuant to Administrative Order No. 244, Defendants need only to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 21, 2026**

                                                            *s/Stephen P. McGlynn*
                                                          **STEPHEN P. MCGLYNN**
                                                          **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.